FILED
APR 19 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 06 CR 572 - 1 |
| vs. | ) ) ) | Hon. Charles R. Norgle |
| ANDREW J. POLESE | ) | |

## NOTICE OF FILING

To: Patrick J. Fitzgerald
United States Attorney

Attn:
Lisa Nollar
Assistant United States Attorney
219 South Dearborn Street
Chicago, IL 60604

On **Wednesday, April 25, 2007,** at **10:30 a.m.** at the opening of court or as soon thereafter as counsel may be heard, before **Judge Charles R. Norgle**, in the courtroom normally occupied by him in the Everett McKinley Dirksen Building, 219 South Dearborn Street, Chicago, Illinois, and present the attached **OJECTIONS TO PSR, RESPONSE TO GOVERNMENTS MOTION FOR UPWARD VARIANCE, AND SENTENCING MEMORANDUM,** as part of the sentencing hearing previously scheduled for the instant case.

Respectfully submitted,

Sean C. Harrison
Attorney for Andrew J. Polese

Sean C. Harrison
Harrison and Alnaqib
222 N. LaSalle St., Ste. 200
Chicago, IL 60601
(312) 236-6929

FILED
APR 19 2007
APR 19 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 06 CR 572 - 1 |
| vs. | ) | |
| | ) | Hon. Charles R. Norgle |
| ANDREW J. POLESE | ) | |

### OBJECTIONS TO PSR, RESPONSE TO GOVERNMENT'S MOTION FOR UPWARD SETENCING VARIANCE, AND SENTENCING MEMORANDUM

Defendant, ANDREW J. POLESE, by and through his attorney, Sean C. Harrison, Harrison and Alnaqib, files the following, Objections to PSR, Response to Government's Motion for Upwards Departure, and sentencing memorandum.

### Objections to PSR

The Presentence Investigation Report (PSR), quotes speculation by United States Postal Inspector Larry Maxwell (at PSR page 5 line 170-174; Page 6 lines 186-188 page 9 lines 305-313) that the defendant may have erased images of the minor victim "KC" from certain computers.

Inspector Maxwell's speculations are also quoted regarding a message sent to "KC" from the defendant after he became aware that law enforcement was involved in this case. At PSR page 5 lines 157-160, in addition to speculating about pictures which may have been deleted, Maxwell also indicates that in this particular message the defendant"...seemed to be expressing disappointment as he likely believed he had "gotten away with it"..." (PSR quoting Maxwell not defendant). The defendant objects to this type of speculation regarding uncharged and unsubstantiated activities being present in his PSR.

1

Regarding Part B. "DEFENDANT'S CRIMINAL HISTORY" defendant specifically objects to the characterization appearing at PSR page 13 lines 420-422. The narrative refers to case no. 91 CR 4192, where defendant was charged in Craven County, North Carolina. The narrative indicates that defendant "...took out his penis, and rubbed his penis against the children." (PSR page 13, line 422)

At the request of defendant's counsel, the report upon which this narrative based was reviewed and found to be lacking any language regarding defendant rubbing "on" or "against" anyone. Rather the report indicated that according to one witness the defendant rubbed his penis "at" the witness' daughter.

Defendant denies ever rubbing his penis against a child. It should be noted that he was never charged with any form of sexual assault, abuse, or battery in this case.

In as far as the PSR incorporates the "GOVERNMENT'S VERSION OF EVENTS", defendant objects to the page 12 paragraphs 3, 4, and 5 of the GOVERNMENT'S VERSION OF EVENTS. The defendant was not under a sentence of probation for the two cases cited in these paragraphs when any of the alleged acts in the instant case occurred. The defendant was under a sentence of probation for a 1999 case not mentioned by the government at the time of the commission of the instant case, which the PSR took into account when calculating a criminal history within Category II.

### Response to Government's MOTION FOR UPWARD SENTENCING VARIENCE

As noted in the PSR the defendant's criminal history was calculated incorrectly at the time the plea agreement. As such the beginning factual basis for the Government's motion is incorrect.

2

The Government claims that the sentences given in the defendant's past were lenient because the defendant was in the habit of changing his residence. In its motion the Government indicates," ...defendant has successfully convinced prior courts to suspend his sentences and ignore (or never learn of) his prior convictions for essentially the same offense, *i.e.*, inappropriate sexual contact with minors." (Government's motion at page 11)

The Government further states," If the defendant was not in the habit of changing his residence, he likely would have received imprisonment for his subsequent criminal convictions. But because the defendant committed sexual offenses in more than one state, there is likely no institutional history of his prior crimes or sentences, and he got a fresh start each time he was caught." (Government's motion at page 11)

The Government further states, "The defendant is smart: he realizes that the state of Ohio would not be privy to information about his North Carolina conviction, and visa versa. He is aware of this loophole and has taken advantage of it, knowing the courts are unlikely to catch his cleverness. Moreover, defendant purposely avoided meeting KC for sex until after the expiration of his probation on his prior North Carolina convictions. Defendant's avoidance of criminal sanctions against him takes him outside the contemplation of the Guidelines (which account for courts and probation officers knowing what defendant has done in the past) and this court should depart upward to adequately address Polese's criminal behavior." (Government's motion citing *United States v. Koon*, 518 U.S. 81, 93 (1996)

The factual assertions upon which the Government bases its argument are almost entirely incorrect.

First the assertion that the prior sentencing courts were unaware of defendant's criminal history is a complete fiction and based upon no presentable facts. This is most glaring

3

mistatement is with regard to three of the defendant's prior cases, all for indecent exposure, and all not taking place not merely in North Carolina but all specifically in Craven County (See PSR pages 12-14). It also ridiculous to assume that other courts were some how tricked by the defendant and incapable of retrieving his criminal background.

The assertion by the Government that these prior sentences were the result of some special legal knowledge and manipulation which the defendant possessed is pure fiction.

Similarly, the assertion that the defendant waited to meet and have sex with the victim in the instant case until his two probations from North Carolina were over with is ludicrous. The North Carolina "convictions" of which the Government speaks were completed in 1995, approximately 8 ½ years prior to the defendant meeting the victim in the instant case online.

The fact that the defendant was *on* probation for a 1999 case out of Florida when he committed the offense of Coercion and Enticement (18 U.S.C. § 2422(b)) suggests the lack of the special legal knowledge and manipulation the Government would like to attribute to him. The calculations of the PSR properly assigned 2 criminal history points for this probation status.

Because the Government's motion relies largely on unsubstantiated facts, and facts which are simply untrue, it should be denied.

### Sentencing Memorandum

#### 1. Mr. Polese's History and Characteristics

Subparagraph (1) of 18 U.S.C. § 3553(a) requires courts to consider "the history and characteristics of the defendant." 18 U.S.C. § 3553(a) (1) (West 2003). As Judge Adelman points out, however, the guidelines generally forbid courts from considering factors such as a defendant's age, education and vocational skills, mental and emotional condition, physical condition (including drug or alcohol dependence), employment

4

record, family ties and responsibilities, socio-economic status, civic and military contributions, and lack of guidance as a youth. *United States v. Ranum*, 353 F. Supp. 2d 984, 986 (E.D. Wis. 2005) (Adelman, J.) (Citing corresponding guideline provisions).

The guidelines simply don't address Mr. Polese's "history and characteristics," as 18 U.S.C. § 3553(a) (1) requires. Even more importantly, they don't even permit this court to do so. Thankfully, *United States v. Booker*, 125 S. Ct. 738, 759 (2005)); *see also Ranum*, 353 F. Supp. 2d at 986.

### Family

As is clear from the PSR prepared for the defendant he has a family who supports and cares for him very much. Polese's parents Helena and Eric are of an advanced age and may not survive to see their son released in the case of a prolonged period of incarceration. Exhibit 1 (attached) addressing there love and concern for their son. Prior to his arrest in the present case the defendant was living with his parents in North Carolina. The PSR gives an accurate indication of his other family relations.

### Physical Condition

The PSR accurately records the defendant's physical condition prior to his arrest and during his present incarceration in the MCC Chicago. Notable is that defendant's vision has become blurry since being admitted into custody. *Booker* "requires judges to impose sentences that . . . effectively provide the defendant with needed medical care." *United States v. Nellum*, 2:04-CR-30, 2005 WL 300073, *3 (N.D. Ind. Feb. 3, 2005) (Simon, J.) (Quoting *Booker*, 125 S. Ct. at 765) (justifying subguideline sentence in part based on defendant suffering from high blood pressure, blocked prostate, and suffering heart attack while in custody); *United States v. Hernandez*, 2005 WL 1242344, *6

5

(S.D.N.Y. May 24, 2005) (Sweet, J.) (same where defendant suffered from Hepatitis B, high blood pressure, high cholesterol, and grapefruit-sized hematoma on left side of chest); *United States v. Carmona-Rodriguez*, 2005 WL 840464, *4 (S.D.N.Y. April 11, 2005) (Sweet, J.) (same where defendant suffered from high blood pressure and diabetes).

### Educational and Vocational Skills

The PSR accurately reflects Polese's education and vocational skills. Since Polese has been in custody in the MCC Chicago, he has received a certificate for teaching two different sessions of G.E.D. classes for his fellow detainees. Counsel for Polese was able to confirm that Polese had participated in this program via Richard Hansford, an attorney with the MCC's legal department. The case workers with the G.E.D. program would not release this information.

### 2. The "Parsimony Provision"

Next, § 3553(a) requires courts to "impose a sentence sufficient, *but not greater than necessary*, to comply with the purposes set forth in paragraph (2)." 18 U.S.C. § 3553(a) (West 2003) (emphasis added); *see also Ranum*, 353 F. Supp. 2d at 986 & n.1. This has come to be known as "the parsimony provision." *See Wilson I*, 350 F. Supp. 2d at 922-23. The parsimony provision requires courts to impose the *minimum* necessary to accomplish the purposes enumerated in paragraph (2). Paragraph (2) lists those purposes as:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a) (2) (West 2003). These purposes, of course, substantially correspond to the four goals of criminal punishment we all learned in law school: retribution, deterrence, incapacitation, and rehabilitation.

## A. Retribution

As to purpose (A), Mr. Polese's crimes certainly constitute a serious offense. The guidelines have properly increased his criminal history to a level II based upon his prior conviction. A sentence of 78 to 97 months would constitute serious retribution in this case. Polese has already been made destitute as a result of his incarceration, and as the PSR indicates his health is also suffering since his incarceration.

## B. Deterrence

As to purpose (B), deterrence is generally divided into two subcategories: (1) specific and (2) general. Specific deterrence, of course, is to deter Mr. Polese from ever committing such a sex crime again. Polese has never been sentenced to jail before. The significant amount of time which he has spend in custody, prior to his plea and sentencing in the instant case, has had a profound effect on Mr. Polese's personal beliefs about himself and his behavior. 78 to 97 months is no slap on the wrist. Mr. Polese will be in his mid-fifties when released.

As to general deterrence, a message certainly needs to be sent to the community at large that sex between adults and minors, even consensual sex as in the instant case, will not be tolerated and will be significantly punished with jail time. However, it is the *certainty* of punishment, not its severity, that deters crime. *See United States v. Kloda*, 133 F. Supp. 2d 345, 347-48 (S.D.N.Y. 2001) (Hellerstein, J.) (in context of business crimes); *United States v. Scroggins*, 880 F.2d 1204, 1206 (11th Cir. 1989) (noting Revolutionary War's introduction of concept); *see also* Anthony N. Doob & Cheryl Marie Webster, *Sentence Severity and Crime: Accepting the Null Hypothesis*, 30 Crime & Just. 143 (Univ. of Chicago 2003) (arguing that severity of punishment does not deter crime); Jeffrey Grogger, *Certainty vs. Severity of Punishment*, 29 Econ. Inquiry 297, 308 (1991) (concluding increased certainty of punishment generates significant deterrent effects while increased severity produces insignificant results); William N. Trumbull, *Estimations of the Economic Model of Crime Using Aggregate and Individual Level Data*, 56 S. Econ. J. 423, 427-37 (1989) (analyzing data to conclude certainty of punishment has greater deterrent effect than severity); Ann Dryden Witte, *Estimating the Economic Model of Crime with Individual Data*, 94 Q.J. Econ. 57, 81-83 (1980) (maintaining certainty of punishment produces greater deterrent effect than severity of punishment).

Mr. Polese has been in the MCC Chicago since September 2006. There will undoubtedly be more jail time to come. The certainty of his punishment will deter the public much more than its severity.

### C. Incapacitation

As to (C), which amounts to incapacitation, Mr. Polese will be in his mid to late fifties by the time he is released from custody. Recidivism drops substantially with age. *Simon v. United States*, 361 F. Supp. 2d 35, 48 (E.D.N.Y. 2005) (citing *Nellum*, 2005 WL 300073 at *3); *see also Carmona-Rodriguez*, 2005 WL 840464 at *4 (30-month sentence for 55-year-old defendant where guideline range was 46-57 months); *Hernandez*, 2005 WL 1242344 at *5 (50-month sentence for 49-year-old defendant where guideline range was 70-87 months).

In *Nellum*, Judge Simon of the United States District Court for the Northern District of Indiana found that the likelihood of recidivism by a 65-year-old is very low. *Nellum*, 2005 WL 300073 at *3. In fact, according to a United States Sentencing Commission Report released in May, 2004, "Recidivism rates decline consistently as age increases. Generally, the younger the offender, the more likely the offender recidivates." *Id.* (quoting U.S.S.C., Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, at 12, http://www.ussc.gov/publicat/Recidivism-General.pdf). As the report states, "Among all offenders under age 21, the recidivism rate is 35.5%, while offenders over age 50 have a recidivism rate of 9.5%." *Id.* (quoting same).

According to the Commission Report, for criminal history category III offenders, like defendant Nellum, the recidivism rates were as follows:

---

Age at Sentence Category III Percent Recidivating

---

Under age 21 54.7%

---

Ages 21-25 42.7%

---

Ages 26-30 33.6%

9

```
----------------------------------------
Ages 31-35  32.7%
----------------------------------------
Ages 36-40  29.4%
----------------------------------------
Ages 41-50  24.5%
----------------------------------------
Ages over 50  19.8%
```

*Id.* (quoting same at 28).

The positive correlation between age and recidivism is impossible to deny. *Id.* Indeed, as shown above, the Sentencing Commission in its report did not even bother to separately report statistics on recidivism rates of inmates who are, for example, age 55 at the time of sentence (or age 57 like Nellum). *Id.* One can only reasonably assume that the trend of decreasing recidivism continues downward after the age of 50. *Id.* Under the guidelines, the age of the offender is not ordinarily relevant in determining the sentence. *Id.* (citing § 5H1.1). But under § 3553(a)(2)(C), age of the offender is plainly relevant to the issue of "protect[ing] the public from further crimes of the defendant." *Id.*

In this case, Mr. Polese's criminal history category is even lower than the defendant's in *Nellum* (II as compared with III). According to the same chart Judge Simon used in *Nellum*, someone over 50 years old in Criminal History Category II has only a 13.9% likelihood to recidivate. *See* U.S.S.C., Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, at 12, http://www.ussc.gov/publicat/Recidivism-General.pdf.

Mr. Polese respectfully suggests that by the time he completes 78 to 97 months of relatively harsh conditions in federal prison, his age and his health will have incapacitated him from committing any further crimes.

### D. Rehabilitation

10

Although Mr. Polese has recidivated, he can still be rehabilitated with appropriate treatment, the subject of factor (D) in 18 U.S.C. § 3553(a)(2). But as Judge Adelman put it, "This directive might conflict with the guidelines, which in most cases [obviously including Mr. Damon's] offer only prison." *Ranum*, 353 F. Supp. 2d at 986 (citing U.S.S.G. § 5C1.1, which describes limited circumstances in which court can impose sentence other than imprisonment).

During Mr. Polese's interview for his PSR it was discussed between the Probation Department, the defendant, and defendant's counsel, that FCC Butner, located in North Carolina, had unique programs focusing on sex offender rehabilitation. The nature of Polese's incarceration (i.e. the counseling available), may well help with his rehabilitation. In any case the defendant would request the court recommend placement in FCC Butner.

### 3. Restitution

As mentioned in the PSR, through his own actions (the instant case) Mr. Polese is currently destitute.

### b. Conclusion

Under the "principle of parsimony," this court should sentence Mr. Polese to the minimum necessary to accomplish the goals of criminal punishment under § 3553(a). Mr. Polese submits that the minimum period of imprisonment necessary to accomplish these goals is 78 months.

In addition, Mr. Damon would respectfully request this Court to recommend that he be incarcerated at the FCC Butner in North Carolina. There he would be able to take advantage of the institutions unique sex offender programs. It is also

relatively close to the residence of his parents who may not survive Polese's incarceration.

Respectfully submitted,

Andrew J. Polese

By: _____
Sean C. Harrison, his attorney

Sean C. Harrison
HARRISON AND ALNAQIB
222 North LaSalle Street
Suite 200
Chicago, Illinois 60601
(312) 236-6929

July 16, 2007

To whom it may concern,

Our son, Andrew J. Polese, is in the Metro Correctional Center in Chicago, IL. We realize he may have to spend some time in a correctional facility and so we would like you to know that his father, Eric, & I, who are 62 & 60 respectively this year.

We would like to be around when he comes home. He will have no money, no job & no place to live. He is welcome in our home where he will have his own room & bathroom & he can stay as long as he needs, or wants to.

He is a good son, always was. He is kind, well liked, a good worker, makes friends easily & has a happy disposition.

His work has kept him in Florida for many years & far from family, especially his brother with whom he is very close. We only got to see him once a year & a few times, twice.

Please take all of this in consideration and that he has grown closer to the Lord. If he is sentenced could he be sent to a facility close to home so we can get to visit him for we love him so much & miss him terribly.

Sincerely,
Helena & Eric Polese

# CERTIFICATE OF SERVICE

I, Sean C. Harrison, certify that a copy of the defendants **OBJECTIONS TO PSR, RESPONSE TO GOVERNMENT'S MOTION FOR UPWARD SETENCING VARIANCE, AND SENTENCING MEMORANDUM,** were personally served before 5:00 p.m. on April 19, 2007 by hand delivery to the following:

Patrick J. Fitzgerald
United States Attorney
    Attn:
Lisa Nollar
Assistant United States Attorney
219 South Dearborn Street
Chicago, IL 60604

 

Sean C. Harrison
Attorney for Andrew Polese